PAPENDICK, Inc., v. JOPLIN–PURITY BAKING CO.

No. 78.

District Court, W. D. Missouri, S. W. D.

Jan. 8, 1931.

Wallace R. Lane, of Chicago, Ill., Ralph Kalish, of St. Louis, Mo., Clarence J. Loftus, of Chicago, Ill., and Grover C. James, of Joplin, Mo., for plaintiff.

George T. May, Jr., Frank Parker Davis, Raymond Fidler, and Rector, Hibben, Davis & Macauley, all of Chicago, Ill., and Roy Coyne, of Joplin, Mo., for defendant.

OTIS, District Judge.

On July 30, 1929, G. C. Papendick was granted patent No. 1,722,338 on what was by him claimed to be a certain new and useful improvement in "sliced baked loaf packages and packaging." Plaintiff is now the owner of that patent, and brings this action to enjoin infringement thereof by the defendant and for damages. Defendant admits infringement of the patent if the patent is valid, but denies validity, leaving the matter of validity as the sole question in the case. Validity is assailed chiefly on the ground that Papendick was anticipated by one Rohwedder, from whom, it is claimed, he took the idea later patented by him. The validity of the patent is assailed also on the ground that it embraces no patentable novelty within the meaning of the patent laws.

The making and sale of bread in loaves is, of course, an ancient art and business. The loaves have always, until recently, been sold unsliced. The conception of slicing the loaf in advance of sale sprung no doubt from a consideration of certain disadvantages in the domestic slicing of the loaf—the irregularity in the size and form of slices, the possibility of cut fingers, some slight waste in hand slicing with its greater crumbling, the disadvantage of the actual labor involved in slicing bread. The conception, however, it appears, could not be carried into practice because of such problems remaining to be solved as the devising of workable slicing machines, and the devising of some such method of packaging sliced bread as would preserve its form and freshness.

The patent in suit covers a method of solving the second of the two problems mentioned. It presupposes a slicing machine. It secures the desired packaging thus: The still warm loaf sliced is set in an open, closely fitting, slightly gripping pastboard box, tray, or carton, about an inch in depth. The whole box and bread immediately then are wrapped in oiled paper.

Claim 4 in the application for this patent seems to be fairly inclusive of the several claims, and plaintiff now relies only on claims 2, 3, and 4. Claim 4 is as follows: "The method of packaging a baked loaf of bread of substantially rectangular form, which consists in cutting the loaf while warm and moist inside into substantially uniform slices, thereby providing a plurality of crustless surfaces and permitting gas and moisture to be liberated from the interior of the loaf to circulate to the exterior, placing the sliced loaf into a tray of stiff, resilient material of substantially the rectangular dimensions of the baked loaf with its walls engaging the sliced loaf to maintain the slices in compact loaf form with their crustless surfaces in contiguous relation, and then placing a wrapper of substantially moisture and airproof material around and in contact with the tray and its contained sliced loaf, thereby retaining them in assembled condition and confining the liberated gas and moisture for utilizing the same in preserving the freshness of the loaf."

The genesis of the patent includes certain history in which Rohwedder, above referred to, figures largely. For some years Rohwedder had been engaged in developing a bread-slicing machine. Also he had conceived the idea of holding together the loaf after being sliced with long staple-shaped pins; had undertaken to build and had procured a patent on a machine designed automatically to insert pins into the sliced loaves. Eventually he began selling his machines (the bread-slicing and pin-inserting machines). Early in January, 1927, he contracted to sell one set of these machines to the Papendick Baking Company of St. Louis which was not delivered until almost eighteen months afterwards. The bread-slicing machine sold to Papendick had a pin-inserting attachment, but Papendick did not use it. Instead he devised and used in the place of pins a collapsible form of carton. The pins proved unsatisfactory generally. The cartons proved successful. Papendick then obtained the patent now in suit.

1. Concerning the matters thus far stated, there is little, if any, controversy. There is controversy, however, concerning the origin of the idea of using a carton in holding a sliced loaf in form. But, while the evidence is conflicting, consideration of all of it convinces me that the idea of using a paper carton, box, or tray as an alternative for pins, while Rohwedder may have given it some passing consideration and even to some extent experimented with it, Papendick was the first seriously to work it out, to make it practical, and commercially to employ it. Papendick's invention was not anticipated by Rohwedder. Nor was it anticipated by a certain method for packaging doughnuts, referred to in the evidence, which, although of earlier use and bearing some resemblance to the method covered by this patent, was never designed for use in connection with loaves of bread, could not have been so used, if so used, would not have accomplished the same results, and involved entirely different principles.

2. The contention that this patent is invalid for that it involves no novelty and no new discovery also must be resolved in favor of the plaintiff and against defendant. The presumption of validity which attaches to every patent is especially potent as against this particular objection. Nor does the objection come with especially good grace from one who, like the defendant here, admits that after the patent was obtained it began to use the newly patented process which had never theretofore been used either by it or by any other. Indeed that fact seems to me to be the conclusive answer to this contention. To say that there is no novelty in a process which for thousands of years was unknown and unemployed in any country and which when patented suddenly was everywhere adopted and thereafter most extensively and widely used, obviously meeting a great need which existed in an important industry and which nothing had before satisfied, is to fail to understand the true meaning of such words as novelty and discovery. It is not necessary to say that any single element in this new process was theretofore unknown. Perhaps none of them was theretofore unknown. The same thing may be said of almost any new invention, the airplane, for example. But when one takes elements long known, but never before combined into useful discovery, and does for the first time so combine them as that a new and useful process comes into being, he has certainly done that which entitles him to the protection of the patent laws. That has been done here in this Papendick invention.

The prayer of plaintiff's bill is sustained. Appropriate findings of fact may be prepared and submitted for approval and thereafter an appropriate decree. If other relief than the adjudication of the validity of the patent is desired, a motion for the appointment of a master to take evidence upon the subject of damages may be presented and will be sustained.